# NEW YORK SUPERIOR COURT.

In the matter of the application of HENRY D. SMETHURST, for his discharge on a writ of Habeas Corpus.

*A judge*, under § 302 of the code, has power to punish as for a contempt, all disobedience of orders made by him in "proceedings supplementary to the execution." An attachment issued by him for such contempt may, therefore, properly be made returnable before him, *at his office.*

Although the code gives the power of punishing disobedience of his orders to the judge, reference must be had to the Revised Statutes as to the mode in which that power is to be exercised. (2 R. S. 535.)

Under this statute a judge, upon due proof, may, in his discretion, issue *an attachment* in the first instance against the party accused, to appear and answer, or he may grant *an order to show cause.* In either case, copies of the affidavit upon which the application is founded, should be served with the attachment or order. It is not necessary that the party accused should first have an opportunity of being heard upon an order to show cause before an attachment can issue. The attachment is not issued, in such instances, for the purposes of punishment, after a final adjudication. It is only a mode of bringing the party before the court.

*It seems*, that in the first district, the ordinary practice is, to give *notice of motion* for an attachment, or obtain an order to show cause.

Whether the affidavits upon which an attachment is issued are sufficient to warrant its issuing, is a matter that cannot be reviewed on *habeas corpus.*

*In chambers, before* MASON, *Justice.*—This was a *habeas corpus*, granted to inquire into the cause of the imprisonment of the petitioner, Henry D. Smethurst.

A judgment had been recovered against the prisoner in the Supreme Court in favor of one David Osterhout, and upon proof of an execution on such judgment having been returned unsatisfied, the usual order was made by Mr. Justice HARRIS, requiring him to appear before a referee and make discovery on oath concerning his property. He appeared in pursuance of the order with his counsel, and after the examination had been continued some time, a motion was made by his counsel for an adjournment until the next day, which was denied by the referee, and the counsel thereupon took his hat and left the room. The prisoner then peremptorily refused to answer any further questions in consequence of the absence of his counsel, and shortly after he also left the room. Upon proof by affidavit of these facts, the judge issued an attachment, directed to the sheriff of this city and county, by which he was commanded to attach the defendant so as to have him before the judge, at *his office* in the city of Albany, on a day therein named, there to answer, as well touching the contempt which was alleged he had

committed, as also such other matters as should then be laid to his charge, &c. A copy of the affidavits on which the attachment was granted, was served on the prisoner simultaneously with the attachment.

He then sued out this *habeas corpus*, and notice having been given to the plaintiff in the suit, the case came on, to be heard on the sheriff's return.

The prisoner, in reply to the return, alleged that the attachment was illegal and void;

1. Because it was granted *ex parte*, without the service of any previous notice or order requiring him to show cause why the process should not be issued.

2. Because the affidavits on which the same was granted, did not show sufficient cause for issuing the same; and

3. Because it was void on its face.

> N. B. BLUNT, *for the prisoner.*
>
> Mr. HADLEY, *for the plaintiff in the suit.*

MASON, Justice.—The last objection I shall consider first. Is the attachment void on its face? The counsel for the prisoner earnestly insisted that it was so, because it was made returnable before Justice HARRIS, *at his office*, whereas it should have been before the court at a special term; and he referred to the sections of the Revised Statutes on the subject of contempts (2 R. S. 534, &c.) which provides in all cases for the party being brought before the *court*, and not before a judge. The answer to this objection is very simple and decisive. The 302d section of the code in express terms confers on the *judge* power to punish as for a contempt, all disobedience of orders made by him in these proceedings, supplementary to the execution. The Revised Statutes gave this power of punishing for contempt only to Courts of Record; and attachments were then necessarily returnable before the court. A judge now, under the code, having this power conferred upon him in this special case, he cannot exercise the power unless the person is brought before him. The court, as such, cannot punish, because no contempt is shown to its authority; and no power is given to it to punish for contempt of the orders of the judge. If the party cannot, therefore, be brought before the judge on the attachment, he cannot be punished at all, and this section of the statute is a dead letter. This objection, therefore, must be overruled.

It was also insisted that the attachment was illegally issued, because no order to show cause was previously served on the defendant.

It was properly urged by the counsel for the defendant, and assented to

by the opposing counsel, that although the code gives the power of punishing disobedience of his orders to the judge, we must refer to the Revised Statutes as to the mode in which that power is to be exercised.

The objection of the learned counsel was founded on the third section of the act in relation to proceedings as for contempts to enforce civil remedies (2 R. S. 535,) which provides that where the misconduct mentioned in the first section is not committed in the presence of the court, the court shall be satisfied by due proof by affidavit of the facts charged, and shall cause a copy of such affidavits to be served on the party accused a reasonable time, to enable him to make his defence, except in cases of disobedience to any rule requiring the payment of money, or of disobedience to any subpœna. The fourth section authorizes a precept of commitment in case of disobedience of an order requiring the payment of a sum of money ; and the fifth section provides that in all other cases "the court shall *either* grant an order on the accused person to show cause, at some reasonable time, to be therein specified, why he should not be punished for the alleged misconduct, or shall issue an attachment to arrest such party and to bring him before the court to answer for such misconduct.

It was insisted that according to the plain meaning of the third section, an attachment cannot issue until the party complained of has been afforded an opportunity of being heard in his defence ; and that the proper and ordinary mode of doing this is by an order to show cause. This would be the case if an attachment was the punishment of the offence, and was founded upon a final adjudication of the matter by the court. But it is not pretended that this is the case ; all that the learned counsel insisted on in his argument was that an attachment is a *preliminary adjudication* that the party had been guilty of a contempt. It would be more correct to say that, like an order to show cause, it is evidence that in the opinion of the court the party applying for it has made out a *prima facie* case, rendering it proper that the party accused should be called on for his defence, or in the language of the fifth section, to answer for such misconduct. It is only a mode of bringing him before the court. The evident meaning of the third and fifth sections taken together, it appears to me, is this : a party shall not be punished for any misconduct not committed in the presence of the court, except in the cases specially mentioned, unless the same shall be proved by affidavit to the satisfaction of the court, and unless after having been served with the affidavits containing such proof the accused party shall have been heard in his defence ; and he is to be called upon to make his defence either by an order to show cause

why he should not be punished for his alleged misconduct, or by an attachment arresting him and bringing him before the court to answer for such misconduct. In both cases the affidavits must be served on him. When an order to show cause why he should not be punished for his misconduct is granted, he answers by counter affidavits. If an attachment be granted, he answers to interrogatories propounded to him. The third section declares the manner in which the complainant is to prove his charge, and the general principle that the accused is not to be condemned unheard. The fifth section provides two modes in which he may be called upon to defend himself. If the first mode is adopted, and no sufficient cause is shown, he may then be punished without any further proceedings, and this perhaps would be the most appropriate mode in some of the instances of misconduct specified in the first section, as in the case of a juror charged with improperly conversing with parties to a suit to be tried at the court for which he is summoned. If the latter method by attachment is pursued, unless the contempt is admitted, the party is punished only in case he shall be found guilty after his answers to the interrogatories shall have been taken, and such other proofs contradictory and in confirmation thereof shall have been received.

I am of opinion, therefore, from the best examination I have been able to give to the subject, that the course pursued in this case of issuing the attachment in the first instance, and serving with it the affidavits on which it was granted was warranted by the provisions of the statute. It is also in accordance with the view taken by the Supreme Court in *The People* v. *Nevens*, (1 Hill, 168,) and by the chancellor in the *Albany City Bank* v. *Schermerhorn*, (9 Paige, 372.) In this last case, however, an order to show cause why an attachment should not issue, had been previously served, and the question now before me was not raised. It is, I apprehend, the ordinary course in this district, to give notice of motion for an attachment, or obtain an order to show cause, and it is, as a general rule, the most advisable course. Cases may, however arise, in which it may be important for the rights of the party, prejudiced by the alleged contempt, that the defendant be brought into court on attachment in the first instance, and for that reason, doubtless, the statute has bestowed power to do so on the court or the judge, as I have endeavored to show. It is a matter resting in his discretion, with the exercise of which I have no right to interfere.

The third and last objection taken, viz.: that the affidavits on which the attachment, was issued were not sufficient to warrant its being given, is one of which I cannot take notice on this application. Judge Harris

had jurisdiction both of the subject-matter in controversy and of the person of the defendant. If he erred, it was an error of judgment as to the sufficiency of the evidence, to be corrected on motion to himself or by appeal; the attachment was in the usual form; was issued in a case allowed by law, and was authorized by the provisions of the law; so that it does not fall within the cases specified in the forty-first section, (2 R. S. p. 568,) in which prisoners in custody, by virtue of civil process, may be discharged. If upon the return to a writ of *habeas corpus*, the officer issuing it, can sit in judgment upon the correctness of the legal conclusions of a judge or court, in the lawful discharge of his or their duty, any inferior officer may annul or reverse the judgment and proceedings of the highest court, when they in the least affect the liberty of the citizen, (*The People* v. *Nevins*, 1 Hill, 159.) It is not for such purposes that the right of *habeas corpus* is secured, and the provisions of the act sufficiently guard against such a construction being put upon it.

Upon the whole I see no ground on which I can interfere in this case on behalf of the prisoner, and he must be remanded.