TYLER v. POPPE and another.

Where defendants, having a lien and the possession of goods, are restrained
by injunction from "selling, pledging or disposing" of the same : although
the mere offer to sell may not amount to an infringement of the injunc-
tion, yet it might induce the court to appoint a receiver.

*July* 23,
1844.

*Injunction.*
*Receiver.*

MOTION for an attachment on an alleged infringement of
an injunction ; and, for a receiver.

The defendants, Edward Poppe and Charles E. Poppe,
were commission merchants in the city of New York. The
complainant, three or four years ago, came to this country
from England ; and was introduced to the defendants as
*suitable persons to whom to consign a* large quantity of
sherry wine. On his return, he consigned to the defendants,
in three shipments, about twelve hundred dozen of wine,
valued at ten thousand dollars, on which Messrs. Poppe paid
freight and duty and had the wine carried to their store and
insured. The wine was not sold ; and the complainant ar-
rived in New York in the month of January one thousand
eight hundred and forty-three. He filed his bill ; and ob-
tained a preliminary injunction against the defendants, re-
straining them from " selling, pledging, or disposing of any
of the sherry wines of the above complainant in their pos-
session or parting with the possession or control of the same
or any part thereof until the further order of the court."

One ground of complaint against the defendants was that
the complainant had given instructions that the wine should
be left by Messrs. Poppe in the custom house stores, not only
in reference to the fact that wine and brandy are injured in
reputation by being taken to a private store, but in order to
secure the drawback should he wish to export it. That, in
order to secure this being done, he did not send any invoi-
ces, yet Messrs. Poppe procured false invoices to be made
out and swore them through the custom house. The com-
plainant, after coming out, had authorized the defendant to
sell the wine for six dollars a dozen but they could not get

that for it.   The complainants insisted that they had a right
to sell the wine to cover their expenses and advances,
amounting to six thousand four hundred and twenty-eight
dollars and thirty-six cents.

In relation to the motions, it was shown that, on persons
going to the store of the defendants and applying to pur-
chase sherry wines, Charles E. Poppe offered to sell the
wines in controversy.   The credit of the defendants was
also attempted to be impugned.   In answer to this, it was
urged that a mere offer to sell was not a violation of the
present injunction; and that their credit was in no way im-
paired, they being worth the sum of one hundred thousand
dollars after payment of all their debts.   It appeared that
the defendants were Germans, but had been in this country
about ten years; and also, that the offer to sell was made
from a want of knowledge of the nature of the injunction and
the principal partner in the affair being in Germany.   It was
denied that they had received instructions to leave the wine
in the custom house stores.   The complainant's second let·
ter directed the wine to be placed in a "dry bonded store,"
but contained no other intimation—and further, that the al-
leged fictitious invoice had been signed by a friend of the
complainant, in order to save the expense of the wine being
placed in the custom house store, an officer of the custom
house having told them they could do so; that the complain-
ant never set up the charge of infringement of orders till he
and the defendants had some difficulty, when he preferred
a charge of perjury before the grand jury, but it was thrown
out.   And that, as to the wine, they would be very glad to
give it up, if they could receive even two thirds of their dis-
bursement upon it.

Mr. *Gridley,* for the complainant.

Mr. *Sandford,* for the defendants.

THE VICE-CHANCELLOR:—A consignor should be very
explicit in order to hold his consignees.   The bills of lading
were duly made out to the defendants and they obtained, in
that way, lawful possession of the goods.   As to the inten-

*1844.*

TYLER
*v.*
POPPE.

*July* 23.

tion of having the wines remain in the custom house, the instructions on that point were not sufficiently explicit. There is no such thing known here as a "dry bonded store," and the defendants were not bound to construe the term in the manner charged. There are matters of fact, however, in the case, which cannot be passed upon here.

As to the offer to sell the wines after the injunction had been allowed, it is no excuse for the defendant Charles E. Poppe to say that he did not understand it. He has been here for ten years and may be supposed to have understood it. The offer to sell, although it would not warrant the issuing of an attachment for a violation, would still be sufficient, in the discretion of the court, to authorize the appointment of a receiver; and if the court forbears from ordering the appointment of one at this time, there must be no more offers made to sell the goods. It appears that these defendants are persons of substance and able to meet any penalty for violation of injunction, should such, in future, take place.

Motion for attachment and receiver denied.